# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE       :    ID. No. 1503005476

           : 

v.                     : 

           : 

VERNON D. CEPHAS,      : 

           : 

       Defendant.     : 

           : 

## ORDER

On this 26th day of July, 2021, upon consideration of the Defendant Vernon Cephas' Motion for Postconviction Relief, the Commissioner's Report and Recommendation provided after referral, Defendant Cephas' written exceptions to the Commissioner's Findings of Fact and Recommendations, and the record in this case, **IT APPEARS THAT**:

1. In 2016, a jury found Defendant Vernon D. Cephas guilty of three counts of Rape in the Second Degree, 11 *Del. C.* § 772; one count of Continuous Sexual Abuse of a Child < 13, 11 *Del. C.* § 776; four counts of Unlawful Sexual Contact in the Second Degree, 11 *Del. C.* § 769, as a lesser included offense of Rape in the First Degree; and one count of Sexual Solicitation of a Child , 11 *Del. C.* § 1112A.

2. Prior to his trial, Mr. Cephas rejected two separate plea offers from the State. He acknowledged those rejections on the record. At one point, the offer included a recommended ten years of incarceration. A subsequent plea offer included a recommendation for eleven years of incarceration. After the verdict and receipt of a presentence report, this judicial officer sentenced Mr. Cephas to seventy-

nine-years of incarceration, followed by extended Level III probation. Seventy-five of those years constituted minimum mandatory sentences.

3. Mr. Cephas then appealed his conviction and sentences to the Delaware Supreme Court. After his counsel sought and received permission to withdraw pursuant to Supreme Court Rule 26(c), he then continued his appeal *pro se*. After considering his arguments, many of which he continues to raise in this Superior Court Criminal Rule 61 motion, the Supreme Court granted the State's motion to affirm.[1]

4. Thereafter, Mr. Cephas filed a *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61 and sought appointed counsel. The Court granted his motion to appoint counsel. At one point during the briefing, Mr. Cephas sought to disqualify his appointed counsel and to proceed *pro se*. He then withdrew his request to proceed *pro se* after the Commissioner performed the required colloquy. After the parties requested and received several briefing extensions, they completed their briefing. The Commissioner then issued her Report and Recommendation of December 14, 2020, attached hereto as Exhibit "A."

5. Presently, Mr. Cephas appeals the Commissioner's Findings of Fact and Recommendation as permitted by Rule 62(a)(5)(ii). In response, the State represented that it was content to rely on its previous submission. It accordingly did not file an additional response.

6. In his appeal, Mr. Cephas re-raises several claims, all of which were appropriately addressed in the Commissioner's Report and Recommendation -- some of which were also rejected during his direct appeal. First, he contends that

---

[1] *Cephas v. State*, 2017 WL 3048466 (Del. July 18, 2017) (Table).

2

his trial counsel unreasonably failed to file a motion to suppress his statement because he now alleges that he ambiguously invoked his rights pursuant to *Miranda v. Arizona.*[2]  Second, he alleges that his trial counsel performed ineffectively because she did not relay a twenty-five year plea offer to him, notwithstanding transcript evidence that he rejected that offer and that he had previously formally rejected offers to ten years and eleven years of incarceration.  Third, he alleges that his trial counsel performed ineffectively by not raising certain objections at trial.  Fourth, he alleges that the Court failed to inquire fully into his conflicts with his trial counsel and pressured him into retaining his appointed counsel because the only other option presented to him was for him to proceed *pro se.*

7. The Court's scope of review in this matter requires a *de novo* review of those portions of the report to which objections are made.[3]  After considering Mr. Cephas's four exceptions, his argument, the record evidence, and the Commissioner's analysis when rejecting each argument, the Court finds that the Commissioner appropriately recommended denial of his motion.  His four exceptions do not have merit for the reasons discussed in the Commissioner's Report.  Accordingly, the Court adopts her recommendations, including her detailed analysis of applicable law, and her application of the facts of record to that law.

**NOW, THEREFORE,** after a *de novo* review of the record in this action, and after considering Mr. Cephas' written exceptions filed pursuant to Rule 62(a)(iii), the Court accepts the Commissioner's Report and Recommendation dated December 14, 2020; and

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[3] Del. Super. Ct. Crim. R. 62( a)(5)(iv).

3

**IT IS HEREBY ORDERED** that the Commissioner's Report and Recommendation attached as Exhibit "A", is adopted by the Court in its entirety. Accordingly, Defendant Vernon Cephas' Amended Motion for Postconviction Relief filed pursuant to Superior Court Criminal Rule 61 is hereby **DENIED**.

/s/Jeffrey J Clark
Resident Judge

JJC/klc
oc:   Prothonotary
cc:   The Honorable Andrea M. Freud
       Kathleen A. Dickerson, Esquire
       Suzanne E. Macpherson-Johnson, Esquire
       Bernard J. O'Donnell, Esquire
       Julianne E. Murray, Esquire

# EXHIBIT

# A

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | In and for Kent County |
| | ) | ID. No. 1503005476 |
| v. | ) | |
| | ) | RK15-03-0415-01 through |
| VERNON D. CEPHAS, | ) | RK15-03-0418-01 USC §13 |
| | ) | LIO of Rape 1st (F) |
| Defendant. | ) | RK15-03-419-01 through |
| | ) | RK15-03-0421-01 Rape 2nd §12 (F) |
| | ) | RK15-03-0422-01 |
| | ) | Cont Sex Abuse (F) |
| | ) | RK15-03-0423-01 |
| | ) | Sex Solic Child (F) |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Kathleen A. Dickerson, Esq., Deputy Attorney General, Department of Justice, for the State of Delaware.

Julianne E. Murray, Esq., Law Offices of Murray, Phillips & Gay, for Defendant.

FREUD, Commissioner
December 14, 2020

The defendant, Vernon D. Cephas ("Cephas"), was found guilty following a jury trial on September 13, 2016 of three counts of Rape in the Second Degree, 11 *Del. C.* § 772; one count of Continuous Sexual Abuse of a Child < 13, 11 *Del. C.* §



776; four counts of Unlawful Sexual Contact in the Second Degree,11 *Del. C.* § 769, as a lesser included offense of Rape in the First Degree and one count of Sexual Solicitation of a Child , 11 *Del. C.* § 1112A. Prior to trial Cephas rejected two plea offers from the State one of which would have resulted in Cephas serving ten years incarceration and another plea offer to serve 11 years. A presentence report was ordered and on December 13, 2016 Cephas was sentenced to a total of 157 years incarceration suspended after serving 79 years. The first 75 years were minimum mandatory.

A timely Notice of Appeal to the Delaware Supreme Court was filed. Cephas's counsel filed a brief and motion to withdraw pursuant to Supreme Court Rule 26(c). In the motion to withdraw, appellate counsel represented that he conducted a conscientious review of the record and concluded that no meritorious issues existed. By letter, counsel informed Cephas of the provisions of Rule 26(c)and attached a copy of the motion to withdraw and accompanying brief. Cephas was informed of his right to supplement his attorney's presentation. Cephas, *pro se*, raised seven issues for appeal for the Supreme Court to consider which the Supreme Court classified as follows:

> In his first claim on appeal, Cephas argues that the Superior Court should have suppressed his statement to the police on the ground that his waiver of *Miranda* rights was involuntary. ...

> In his second claim on appeal, Cephas contends that the Superior Court erred when denying the motion to reopen the motion to suppress. ...

> In his third claim on appeal, Cephas argues that his statement should have been suppressed because of a deficiency in the application for the

2

arrest warrant. ...

Cephas's fourth claim on appeal challenges the jury instructions. First, Cephas argues that the jury instruction on "evasion of arrest' was not supported by the evidence. ... Second, Cephas claims for the first time that the jury instruction "for 3507 statement" was "inadequate." ...

In his fifth claim on appeal, Cephas contends that the prosecutor engaged in improper vouching. ...

In his sixth claim, Cephas argues that the lack of physical evidence should have resulted in his acquittal at trial on the basis of insufficient evidence. ...

In his seventh and last claim on appeal, Cephas contends that the Superior Court was biased against him because the Trial Judge did not appoint him new counsel despite knowing of 'the obvious disconnect' between Cephas and Defense Counsel.[1]

The Supreme Court granted the State's motion to affirm as to all of Cephas's claims.[2] The Supreme Court affirmed Cephas's conviction on July 18, 2017 and the mandate issued on August 4, 2017.

Next Cephas filed a *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61 on August 28, 2017 along with a motion for appointment of counsel. The Court granted the motion to appoint counsel on November 22, 2017 and referred the matter to the Office of Conflicts Counsel. On March 15, 2018 Julianne E. Murray, Esquire ("Appointed Counsel") was appointed

---

[1] *Cephas v. State*, 169 A.3d 352 (Table), 2017 WL 3048466, *2-4.

[2] *Id.* at *4.

3

to represent Cephas. On November 7, 2018 Appointed Counsel filed an Amended Motion for Postconviction Relief and an opening brief in support of the motion. The matter was set for briefing. On March 5, 2019 while the matter was still in briefing, Cephas filed a *pro se* Motion to Disqualify his Appointed Counsel which was referred to Appointed Counsel for a response. On July 15, 2019 Appointed Counsel notified the Court that Cephas requested that he be allowed to proceed *pro se*. On August 19, 2019 the Court held a colloquy with Cephas to determine if he wished to proceed *pro se*. At the hearing Cephas stated that he had not reached a decision as to whether he wished to proceed *pro se* and the Court gave Cephas until August 23, 2019 to inform the Court how he wished to proceed. On August 23, 2019 Appointed Counsel notified the Court that after speaking with Cephas the day before that he decided to have Appointed Counsel continue to represent him and not to proceed *pro se*. Several further extensions of the briefing order were issued at the request of the parties. The matter was further delayed due to the State of Emergency issued by the Governor during the Coronavirus pandemic.

## CEPHAS'S CONTENTIONS

Cephas's Appointed Counsel filed an Amended Motion for Postconviction Relief pursuant to Superior Court Rule 61. In the motion, the following grounds for relief were raised:

Claim I: Cephas's 6th and 14th Amendment rights under the U.S. Constitution and Article I, § 7 rights under the Delaware Constitution were violated by Trial Counsel's failure to file a motion to suppress directed to Cephas' invocation of his right to remain silent and an unlawful warrant.

4

Claim II: Cephas's 6th and 14th Amendment rights under the U.S. Constitution and Article I, § 7 rights under the Delaware Constitution were violated by Trial Counsel's ineffectiveness in failing to communicate at least one plea.

Claim III: Cephas's 6th and 14th Amendment rights under the U.S. Constitution and Article I, § 7 rights under the Delaware Constitution were violated by Trial Counsel's ineffectiveness in failing to object to and/or challenge key witnesses in the State's case.

Claim IV: Cephas's 6th and 14th Amendment rights under the U.S. Constitution and Article I, § 7 rights under the Delaware Constitution were violated by the Court's failure to conduct a more thorough examination into the problems between Trial Counsel and Cephas.

## DISCUSSION

Under Delaware law, the Court must first determine whether Cephas has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[3]   Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[4] Cephas's motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the motion.   As this is Cephas's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

---

[3] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).

[4] Super. Ct. Crim. R. 61(i)(1).

None of Cephas's claims were previously raised at trial or on direct appeal and they should be barred unless he demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[5] The bars to relief are inapplicable to a jurisdictional challenge or "to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of Rule 61.[6] To meet the requirements of Rule 61(d)(2) a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted[7] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United State or Delaware Supreme courts, applies to the defendant's case rendering the conviction invalid.[8] Cephas's motion pleads neither requirement of Rule 61(d)(2).

Each of Cephas's grounds for relief are premised on allegations of ineffective assistance of counsel. Therefore Cephas has alleged sufficient cause for not having asserted these grounds for relief at trial and on direct appeal. Cephas's ineffective assistance of counsel claims are not subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Cephas, allege ineffective assistance of counsel in order to overcome the procedural default.

[5] Super. Ct. Crim. R. 61(i)(3).

[6] Super. Ct. Crim. R. 61(i)(5).

[7] Super. Ct. Crim. R. 61(d)(2)(i).

[8] Super. Ct. Crim. R. 61(d)(2)(ii).

6

"However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[9] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[10]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two part analysis enunciated in *Strickland v. Washington*[11] and adopted by the Delaware Supreme Court in *Albury v. State*.[12]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[13] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the proceedings

---

[9] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[10] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[11] 466 U.S. 668 (1984).

[12] 551 A.2d 53, 58 (Del. 1988).

[13] *Strickland*, 466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

would have been different, that is, actual prejudice.[14] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[15]

Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[16] However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[17] In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[18] Furthermore, Cephas must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[19]

Moreover, there is a strong presumption that defense counsel's conduct

---

[14] *Id.*

[15] *See e.g., Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).

[16] *Strickland*, 466 U.S. at 687.

[17] *Id.* at 697.

[18] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[19] *Strickland*, 466 U.S. at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

8

constituted sound trial strategy.[20] In *Harrington v. Richter*,[21] the United States Supreme Court explained the high bar that must be surmounted in establishing an ineffective assistance of counsel claim. In *Harrington*, the United States Supreme Court explained that representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial.[22] The challenger's burden on an ineffective assistance of counsel claim is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial.[23]

Counsel's representation must be judged by the most deferential of standards. The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with his client, with opposing counsel, and with the judge. In light of this strong precedent I have reviewed the file, considered Trial and Appellate Counsels' affidavits and the arguments of counsel and I conclude that Cephas has failed to meet the burden imposed by *Strickland*. Both Trial and Appellate Counsel clearly deny all of Cephas's allegations. I find Trial and Appellate Counsels' affidavits more

---

[20] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[21] *Harrington v. Richter*, 131 S. Ct. 770 (2011).

[22] *Id.*, at 791.

[23] *Id.*

9

compelling than Cephas's allegations. I find that Trial and Appellate Counsel represented Cephas effectively. To the extent, if any, that Cephas's claims are not procedurally barred I will address each claim.

Cephas's first claim alleges that Trial Counsel's representation was ineffective because she failed to file additional suppression motions. First, Cephas argues that he invoked his right to remain silent during his interrogation. Cephas claims that the interrogation should have ended when he told Detective Csapo "I can't even do this no more." Second, Cephas claims that his arrest was unlawful and therefore any subsequent statement would be inadmissible as "fruits of the poisonous tree."

Trial Counsel disputes Cephas's version of events and assessment of potential suppression issues. First, Trial Counsel states that she engaged in lengthy discussions, including a review of his recorded statement and other discovery materials, with Cephas on at least five occasions prior to the suppression hearing. According to Trial Counsel's affidavit, during a discussion with Cephas on the day of his preliminary hearing, he decided not to have copies of discovery due to his incarceration and the lack of privacy at the prison. Trial Counsel states that she discussed discovery with Cephas at length on October 22, 2015, and Cephas "advised he was not interested in a plea." On November 7, 2015, Trial Counsel states that she again conducted a lengthy visit with Cephas to discuss his case, including potential suppression issues. Trial Counsel again discussed the case with Cephas during his final case review on November 10, 2015. On this date Cephas received additional time to consider a plea offer that had been extended to him on that day. Cephas refused the plea offer and the case was set for trial on November 16, 2015. The day

10

before trial Cephas indicated to Trial Counsel that he wished to hire private counsel. Cephas indicated to Trial Counsel that he might accept a plea if his mother advised him to do so but when she did not, he again rejected the plea offer. Thereafter, Cephas asked the Court for a continuance to allow him time to seek private counsel. Cephas did not retain private counsel. Subsequently, Trial Counsel filed a motion out of time and a motion to suppress on July 11, 2016. The motions were sent to Cephas on July 22, 2016 and the hearing was held on August 4, 2016. Trial Counsel was aware of Cephas's desire to suppress his statement based upon the grounds currently articulated in his motion for postconviction relief but she did not believe that either argument was meritorious. Trial Counsel believed that "a lone statement, 'I can't do this no more.' ... must be viewed in context based on the questioning before and continued conversations after this statement." Trial Counsel, states that prior to the contested statement, the detective discussed the allegations against Cephas, his possible motivations for the alleged conduct and getting help for Cephas. After these statements, Cephas then stated that he "can't even do this no more." The detective then continues to discuss help for Cephas. Trial Counsel did not feel that this scenario equated to an invocation of the right to remain silent.

Second, Cephas claims that his arrest was unlawful because the police did not possess a valid warrant prior to entry in to the house to seize him. Again, Trial Counsel disagrees with Cephas's assessment of the situation. According to Trial Counsel this issue was clarified during the suppression hearing. Det. Csapo described his process for obtaining the warrant, which involved him getting the signed warrant prior to leaving for Cephas's home. Trial Counsel also notes that the police were

11

given access to the house by a juvenile occupant. Trial Counsel concluded that Cephas's second issue was explored at the suppression hearing and that the testimony demonstrated that this claim was "not a meritorious argument."

I agree with Trial Counsel's analysis on the issue of invocation. To determine whether an ambiguous invocation of *Miranda* occurred, the entire context of the conversation must be examined "analyzing the totality of the circumstances." [24] When the statement is viewed in the light of its context and there is no ambiguity, *Pulliam* is not implicated. During the contested exchange between Det. Csapo and Cephas, the detective is discussing the allegations with Cephas. He told Det. Csapo that "My whole life ... it seems like ... it's been rough, boy" In response the detective tells him that his life isn't that bad but that Cephas "took advantage of someone." Cephas responds that "Don't matter what I say." The detective continues talking to Cephas whereupon he states: "I can't do this no more." When viewed in context, this is not an invocation but a response to the detective discussing his life, behaviors and the need for help. There was no need for a suppression motion because Cephas did not invoke *Miranda*. Cephas was simply stating that he could not live the way he had been living anymore.

Additionally, I agree with Trial Counsel's analysis of the arrest warrant issue. The State previously addressed this claim in its response to Cephas's Delaware Supreme Court Rule 26© brief. Quite simply, there is nothing in the record from the suppression hearing to support Cephas's claim that he was arrested before the execution of the warrant. Det. Csapo was clear in his testimony during the

---

[24] *State v. Pulliam*, 2012 WL 6845693 (Del. Super. Dec. 13, 2012), at *5.

12

suppression hearing. He received the arrest warrant over video phone *prior* to leaving for Cephas's house. During his testimony the detective estimated the actual time when different tasks were accomplished but he was certain on the order of events. In his testimony the detective stated that he received the warrant "between one and two in the afternoon." During cross examination Det. Csapo stated his arrival time at Cephas's house was "approximately 2:30." Again, the time is clearly inexact. The detective is exact, however, in distinguishing the order of events. He was clear that the warrant came before he left for Cephas's house. The sworn testimony at the suppression hearing demonstrates that there was no issue. Trial Counsel clearly had no basis to file for suppression on this issue.

Both arguments presented by Cephas fail. First, Cephas has failed to demonstrate a *Miranda* invocation given the totality of the circumstances surrounding the statement. Cephas's second claim was explored during the suppression hearing and the appellate process and has no merit. Cephas cannot show that there is either a cause for relief or prejudice as required by Superior Court Criminal Rule 61(i)(3). As Cephas's claim of ineffective assistance of counsel fails to meet either prong of *Strickland* his first ground for relief should be denied.

Cephas's second claim is that Trial Counsel failed to communicate a 25 year plea offer to him on or about June 29. Cephas agrees that he rejected the plea offers to ten years and eleven years. Cephas never states that he would have accepted the twenty-five year plea.

Again, Trial Counsel contradicts Cephas's version of events. She maintains that she communicated all plea offers to Cephas. According to Trial Counsel's

13

affidavit, Cephas was not willing to entertain any plea offer after the November 2015 conversation with his mother.

Plea negotiations were ongoing during the pendency of this case. The *best* offer extended to Cephas was for Rape Second Degree and Sexual Solicitation with a 10 year Level V sentence. This plea was rejected on the record by Cephas. He was given another plea offer to eleven years at Level V, which was rejected and Cephas subsequently requested a continuance to seek private counsel. A plea offer was extended to Cephas in June and he rejected this plea on September 6, 2016. Cephas's intent was unequivocal in his plea rejection colloquy on September 6 – he was *not* going to entertain the plea offer. According to the transcript of the September Colloquy:

> THE COURT: Today if you were offered a plea of 25 years recommended sentence, you would not take it?
>
> THE DEFENDANT: No.
>
> THE COURT: You would want to go to trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you would want to go to trial based on your decision not to take that offer, and knowing that your decision not to take that offer, and knowing that if convicted, you will be facing minimum mandatory time of 177 years if you are convicted of all offenses, and it would be by all intents and purposes life with no chance of parole or probation.
>
> THE DEFENDANT: Yes sir.
>
> THE COURT: Okay. Have had the chance to talk over this

matter fully with Ms. Macpherson-Johnson in making that decision?

THE DEFENDANT: No.

THE COURT: Okay. Is there something else that you need to talk to her about?

THE DEFENDANT: A lot of stuff.

THE COURT: With regard to – not with regard to your trial preparation, but with regard to the decision regarding that plea?

THE DEFENDANT: I'm not taking it. I'm not trying to be ignorant.

THE COURT: No. I think we are kind of two ships passing in the night. Maybe we need to line up and talk for a second.
You had enough chance to consider whether or not you want to take that plea, and you don't want to take that plea?

THE DEFENDANT: No, sir.

THE COURT: Is that correct?

THE DEFENDANT: That's correct.

The COURT: Okay. And at least with regard to that decisions, you've had enough time to talk to Ms. Macpherson-Johnson?

THE DEFENDANT: for the purposes of this motion or this, I'll say yes.[25]

Cephas was clear during the Plea Colloquy. He would not accept the plea to 25 years of Level V. He also clearly stated that he had sufficient time to discuss this decision

---

[25] Plea colloquy trans. At 5-7.

15

with his Trial Counsel.

Trial Counsel was adamant that she presented all plea offers to Cephas. Furthermore, Cephas cannot show any prejudice since he clearly had no intention to accept the plea offer. Except for the one instance when he expressed that he may consider accepting a plea if his mother recommended it, Cephas steadfastly refused to entertain the pleas. He was clear in his November 6th Plea Colloquy with the Court. He would not accept the plea. Cephas has failed to demonstrate either a cause for relief or prejudice from the alleged defect in representation. Therefore, this claim of ineffective assistance of counsel should fail.

In his third claim Cephas argues that Trial Counsel should have objected to portions of testimony from Dr. Alwan, Christina Lynch and Det. Csapo. First, Cephas points out that Dr. Alwan testified that the victim reported that the abuse had occurred for a year, contrary to the victim's statement at the Children's Advocacy Center ["CAC"]. Secondly, the doctor admitted on direct that he noted a fissure or gap in the child's hymen but that he "put a question mark in my notes because I don't have a lot of experience in these findings."

A full examination of the trial transcript of Dr. Alwan's testimony shows that the doctor asked the victim to recount the abuse to him. Dr. Alwan testified that to get a time frame "I had to give her options like weeks, months, years, and she said one year." That was the extent off the testimony relating to the time frame. From the context of the testimony, it is clear that the victim was not providing him with an exact time frame.

Dr. Alwan's testimony regarding his physical examination made no finding of

16

abuse. The full response given by the physician, shows that Dr. Alwan never testified that there was physical evidence of abuse. According to the transcript:

> Q: So the purpose of your genital exam during this well-child visit is not to assess whether there's been sexual abuse?
>
> A: No.
>
> Q: And when you examined [victim's] genital area, were there any findings of significance?
>
> A: I did notice a small gap or fissure in her hymen membrane. I put a question mark in my notes again because I don't have a lot of experience in these findings. It's not a nonspecific finding. Sometimes we find that in normal kids.
>
> Q: So it's basically something you just noted?
>
> A: Uh-hum. And we see that usually after trauma, any type of trauma.

Dr. Alwan never correlated the hymen gap or fissure to abuse. Trial Counsel questioned Dr. Alwan abut his findings and he agreed with her that this condition is found in children "[e]ven without a history of abuse." The State does not believe that this portion of testimony was prejudicial to Cephas. Dr. Alwan testified about a physical feature found in the victim. He never stated that the physical feature meant the victim was abused.

Second, the forensic nurse examiner Christina Lynch ("Lynch") stated that she did not get a detailed statement from the victim because she expected her to be

17

interviewed at the Child Advocacy Center. She described the interviewers as persons "whose only job it is to talk to kids and kind of find out the truth." Again, it is a stretch to argue that Lynch's statement created the idea that the victim's statement at the CAC was the truth. Lynch stated "*kind of* find out the truth." This is not a statement of certainty. Lynch also made no opinion of whether the victim's statement at the CAC was the truth. Lynch only knew what had been told to her at the hospital.

Third, Cephas objects to two statements made by Det. Csapo. The first was a response to whether it was "common for a suspect to come in and tell the information that you want." The detective replied that it was uncommon. This question must be viewed in context. It was long interview. The question was not designed to call Cephas a liar but to explain that interviews can be a long process.

The Supreme Court of Delaware examined this statement in Cephas's direct appeal. The Court found:

> the records reflects one instance when the Superior Court interrupted the direct examination of Detective Csapo specifically out of concern that some of the questions presented to him 'should [might] have been reasonably expected to have elicited potential vouching with regard to the truth or falsity of the defendant's statement." The Trial Judge's *sua sponte* interruption of the testimony was an appropriate use of the court's discretion and prevented the possibility of Detective Csapo giving an impermissible opinion of the veracity of Cephas's statement.[26]

The second challenged response by Det. Csapo involves the CAC. Det. Csapo

---

[26] *Cephas v. State*, Del. Supr., No. 12, 2017 (Del. Supr. July 18, 2017) at *9.

18

testified that with victim's of a certain age, contact is through the CAC and that he "would direct the interviewer to ask specific questions to elicit a result that I needed in my investigation." The trial court, *sua sponte*, interrupted the detective's testimony. Cephas claims that "police officers are presumed to be tellers of truth, his statement casts a certain reliability on the truthfulness of the alleged victim" and this testimony impacted the outcome of the outcome of the case is a stretch.

Trial Counsel refutes Cephas's opinion of what is critical trial testimony. Trial Counsel found the victim's trial testimony particularly compelling. Trial Counsel recalled the victim as being "poised and responsive to questions." She also noted that the victim "burst into tears" when asked to identify Cephas. To Trial Counsel, who was obviously present in the courtroom, the victim's testimony was key to the verdict. Trial Counsel states that the transcript did not fully capture the trial. She relied on many factors when deciding how to react to a given witness, including the "attentiveness of the jurors."

The Court has found that failing to object during trial because of a "conscious strategic decision on the part of trial counsel may not be "objectively unreasonable."[27] In *Walker* the Court added that it could not find prejudice from trial counsel's actions because the defendant was acquitted of several offenses.[28] Here Trial Counsel stated she made strategic decisions not to object to many of the contested statements. She based these decisions on details including "the attentiveness of the jurors with regard to various witnesses." In other words, if Trial

---

[27] *Walker v. State*, 2007 WL 2949145, at *2 (Del.).

[28] *Id.* at *2.

19

Counsel felt that the jurors were not paying particular attention to the witness, she did not feel it was necessary to highlight testimony that might otherwise be given little weight.

Furthermore, Cephas must show prejudice. It should be noted that Cephas was not convicted on all indicted charges. He was originally charged with three counts of Rape First Degree but convicted of the lesser included offense of Unlawful Sexual Contact First Degree. To arrive at this verdict, the jury must not have believed beyond a reasonable doubt the victim's statement at the CAC that Cephas had engaged in penile-vaginal intercourse with her. To arrive at this verdict, the jury had to conclude that Cephas engaged in sexual contact, not intercourse as the victim described. As Cephas has failed to provide a cause for relief or a demonstration of prejudice, his claims should fail.

In his fourth claim Cephas alleges that his rights were violated by an insufficient colloquy by the Court into issues between Cephas and Trial Counsel. Cephas wanted certain motions filed and Trial Counsel did not feel they were appropriate. Cephas told the Court that he was not smart enough to proceed on his own. In basic terms, he wanted the Court to appoint another attorney for him.

Trial Counsel denies many of the allegations made by Cephas about her representation. According to Trial Counsel she met with Cephas to discuss his case on many occasions, beginning at his preliminary hearing. After Cephas requested a continuance to hire private counsel, Trial Counsel met with him seven times prior to trial. Trial Counsel agrees that discovery was not given to Cephas to have in prison but states that this was his choice. Trial Counsel noted that Cephas did not want

materials related to this case "due to the sensitive nature of the case and the lack of privacy at the prison."

In his appeal, Cephas claimed that the Court was biased against him because the Court did not appoint him a new counsel. The Supreme Court denied the allegation and ruled that Cephas presented no evidence to support this claim. Contrary to Cephas's claim, the Supreme Court found the trial judge accommodated him. The Supreme Court found that during the suppression hearing "the Trial Judge addressed Cephas' concern and gave him the option to proceed through the required colloquy. Cephas chose to stay with Defense Counsel."[29]

A defendant is "guaranteed the right of self-representation [and] the right to be represented by counsel" by the United States Constitution.[30] The right to self-representation, however, is only invoked after "the defendant has made a knowing and intelligent waiver of the right to counsel."[31] In *Hooks* the defendant wanted to proceed with trial counsel serving as his co-counsel but the Delaware Supreme Court concluded that it was not an abuse of discretion for the court to "forc[e] defendants to make the choice between accepting appointed counsel or conducting their defense."[32] As such, Cephas has failed to show where he is entitled to postconviction relief through either cause or prejudice.

---

[29] *Cephas* at 11.

[30] *Hooks v. State*, 416 A.2d 189, 197 (Del. 1980), *citing Faretta v. California*, 422 U.S. 806 (1975).

[31] *Id.*

[32] *Id.* At 198.

21

## CONCLUSION

After reviewing the record in this case, it is clear that Cephas has failed to avoid the procedural bars of Superior Court Criminal Rule 61(i). A review of his counsel's affidavit clearly shows that counsel represented Cephas in a competent fashion and was not ineffective. Additionally, Cephas has failed to demonstrate any concrete prejudice. Consequently, I recommend that Cephas's motion be denied as procedurally barred by Rule 61(i)(3) for failure to prove cause and prejudice and as meritless.

Commissioner Andrea M. Freud

AMF/dsc
oc: Prothonotary
cc: Hon. Jeffrey J Clark
Kathleen A. Dickerson, Esquire
Suzanne E. Macpherson-Johnson, Esquire
Bernard J. O'Donnell, Esquire
Julianne E. Murray, Esquire

22